Mr. Adams. I may please the court. Joshua Adams on behalf of appellant Keenan Ferrell. Mr. Ferrell raises two issues on appeal before this court and the first issue is whether an out-of-court statement made by an unindicted co-conspirator should have been admitted as evidence. Now Dr. Ferrell, Mr. Ferrell raised this issue at a pretrial conference and the unindicted co-conspirator William Woods had made a telephone call and an email to Mr. Ferrell's previous counsel stating in part that he had been a manager at Mr. Ferrell's company Take Action InterArts and that he was in charge of billing and that also more specifically your honors that in the July 29th 2011 voicemail he states at the end it's entirely my fault I'm the one that should be losing my license and facing the consequences for this because I disregarded the law and did this. Well in the email and in the voicemail it seems to me that Woods admitted only to being negligent in providing the documentation when you look at you know everything that was said and I don't understand how that's inculpatory at all since the allegations were that Medicare was charged for services that were not rendered by a psychologist not that adequate documentation wasn't provided as to the allegations that issue aren't his statements entirely exculpatory? I think his statements at the end of that voicemail can be deemed as inculpatory because the government's evidence was that there was false billing, there was billing for patients that were never seen, and there was over billing. So on that statement I think a admissions. But he keeps saying you know he well in the voicemail looking at the text the government put in their appendix I lied to him and said I had been doing the notes on time and I hadn't and so as Judge Roper says he talks about documentation and then he continues talking about that in this lengthy email but it's filled with all sorts of other statements we trained we tried hard we did all of these things I apologize for whatever I did that was wrong. Boy it doesn't come across as the kind of thing rule 804 b3 is talking about and the district judge had to make an assessment here we do have a deferential standard of review I believe. Yes your honor and I believe that those parts of those voicemail and emails could be bifurcated and not admitted to the jury well as certain statements that Mr. Woods does make. So you've identified one I I don't see anything much at all in the voicemail he just says very vaguely this situation with the investigation of Medicare documentation is entirely my fault and then the email maybe maybe has another shred or two but taken as a whole I just don't see how you could say the district judge's sense of this was an abuse of discretion. Well I believe the district court could have had a limiting instruction in terms of part of the statement could have come in and part of it could not come in. What would have come in? If focusing on the voicemail first in the July 29th voicemail I believe the last section which I quoted it's the it's entirely entirely my fault and the next two sentences after that the next sentence after that I believe should could be admitted. And surely that's taken out of context because just above that part is all this talk about timeliness and missing documentation not out-and-out fraud saying you know I was in Illinois personally performing services on a certain day when I was also in Texas on that same day personally performing services or have sending people who aren't psychologists over to do things that I'm telling Medicare a psychologist did. This is way different from not having good documentation. That's correct judge but he also states that he says he lied to Dr. Farrell about his documentation and keeping up the billing. So I think if you look at those statements accompanied with the government's witnesses such as the students who worked at at this company such as Natalie Hall, Megan De Quatro and Steve Chambers who stated that Bill Woods and William Woods were the ones who are managing the day-to-day services and who handled the billing and pretty much the operational services that take action in our arts. I think that statement when viewed with those other witnesses I think would give the jury an alternate alternate theory of criminal liability as to Mr. Farrell. Turning to if I could ask how did this statement of William Woods come into the record to begin with? Was it during discovery? Was it a lately listed exhibit prior to trial? It came in during discovery. Dr. Farrell's previous counsel had transcribed the voicemail and given it to me. So our theory of admissibility would have been to call the attorney to testify as foundation. So there was a time period that then the government would have had to be able to depose William Woods with regard to the statement? I believe yes judge. It was turned over to the government significantly with enough time prior to trial. Turning to the second issue that Dr. Farrell raises is that the testimony of Herbert Shriver was impermissible 404B evidence. Dr. Shriver had been indicted and entered into a plea deal with the government related to his action in Texas. Now he testified as to certain statements Dr. Farrell made to him while Dr. Farrell was in Texas but he also testified as to other statements Dr. Farrell made regarding other in Texas and in quote as other states. Now the district court's primary conclusion about this is it's actually direct evidence of the crimes with which Farrell is charged here. Yes. It's not even 404B. No certain statements that certain testimony that Dr. Shriver gave was indeed direct evidence regarding statements Dr. Farrell made about his actions here in Illinois. But there were other parts of his testimony related to Dr. Farrell's statement that he's setting up other practices in Texas and Iowa and Michigan, New Mexico. I think if you look at that in context with the entire case the import of that statement is that Dr. Farrell is trying to commit fraud all over the country not just charge in Illinois. I think based on the... And Dr. Farrell is denying that he has any such scheme underway. He's denying his knowledge of any such scheme. The district court says to the extent and of course this is a pre-Gomez decision but she actually does a pretty good job of hitting the bases that we said need to be hit. Is it relevant? Yes. What's it relevant to? The following non-propensity inferences. Is there too much prejudice under 403? No. I mean so she does a lot of that. So why doesn't it come in as knowledge and motive? Well it comes I think that the statement about the Illinois actions I think would are direct evidence but the other statements because there's no evidence that it is motive or it is knowledge of the other states. The government's already introduced evidence by this point of knowledge Dr. Farrell's knowledge of Medicare billing practices. They've already had Kelly Hartrung I Medicare forms and acknowledging the practice on what she has to be the certain procedures he has to do in order to submit billing. So any statements by Shriver are not only superfluous but they also are more propensity evidence as to Dr. Farrell's propensity to commit fraud in other states not the direct evidence of his fraud in Illinois. Okay if you want to save just a bit for the end. May it please the court. Paul Zurf for the United States. Focusing on the 804 B3 argument first. The district court properly excluded the out-of-court statements by William Woods as hearsay that was not admissible under the 804 B3 exception. For the first time in the entirety of these proceedings the defendant is now focusing on particular statements out of the William Woods email and voicemail that he believes were admissible. In the district court he wanted the entirety of the voicemail and the entirety of the email in evidence. In his opening brief to this court he didn't identify any specific lines any specific statements in the voicemail or the email that he believed were appropriately admissible under the rule. The Supreme Court has said in the Williams opinion that the self-exculpatory statements have to be separated from the inculpatory ones. First time he's doing it here and as your honor noted during the defendant's argument a moment ago those few statements that on their own in a vacuum could possibly be viewed as inculpatory clearly are not when they are read in context of the remainder of the entirety of William Woods' admission to Dr. Farrell's prior counsel was that he was negligent. He failed to write up progress notes, therapy notes in a timely manner. That's the entirety of William Woods' admission to the attorney and that is not taking ownership, taking responsibility for a federal fraud, a what they were facing. So because of that under the 804 b3 analysis William Woods simply has not made an inculpatory statement that could have been admitted through the entirety of the statement was an exculpatory statement an exculpation for Dr. Farrell and it was properly excluded as hearsay. Not very inculpatory of him either. No. Maybe he's careless. That's exactly right at most it's just it's false exculpatory is all it is and and indeed it wasn't even properly corroborated again as the district court pointed out there was no corroboration to those statements. You know I agree that the testimony of Dr. Shriver as to Dr. Farrell's financial situation I agree that it was relevant to motive but does the probative value of such testimony may outweigh the risk of unfair prejudice? I think so your honor the probative value does outweigh any unfair prejudice and and the district court I think it's page 18 of documentary 151 says exactly that that she Judge Kendall did a 403 balancing analysis concerning specifically this evidence the statements from Dr. Shriver that Farrell had admitted that he owed money to the government. If anything out of Dr. Shriver's testimony that's the only thing that could conceivably be cast under rule 404 B and Judge Kendall conducted that analysis. She she reviewed that a proposed that proffer testimony what was expected from Dr. Shriver and ruled that the probative value did outweigh any unfair prejudice and and under the abuse of discretion standard that balance is is certainly within her discretion to make. She properly made that decision and it's not something that can be overruled by an abuse of discretion standard in this court. So so you also make the argument in your brief that even if maybe the district court didn't come to the right balance on for the 403 considerations this is some sense of how Shriver's testimony fits in with all the rest of the evidence the government had. Of course and well regarding a big part of your case was it no he wasn't and in fact your honor the entirety of Shriver's direct examination I've put in the appendix to the government's brief it's I think 22-23 pages the majority of which is Dr. Shriver's explaining his history and explained that he entered into a plea agreement. The substance of his testimony was only about 10 pages out of an 1100 page transcript. It was a very small piece. Here's what the government's evidence was. We we introduced four of Dr. Farrell's students who testified that they were going to introduce testimony from a number of the nursing home administrators who said that they never saw Dr. Farrell at nursing homes who said that they saw these students they saw Bryce Woods who was unlicensed playing his guitar for patients who said that Williams it's nice but it's also a crime. That's exactly right and that that was the key piece of course if someone wants to go visit a patient in the nursing home and play his or her guitar he's allowed to year after year after year to the tune of millions of dollars that's that's the crime in this case. We introduced testimony from Josh Adams got it right Kelly Hartung who is an expert from Wisconsin Physician Services who testified about the Medicare program in general and testified about these certifications that Dr. Farrell signed repeatedly over years specifying that he would abide by Medicare rules and regulations. We introduced bank records and testimony from a summary witness who testified that approximately 61% of the entirety of Dr. Farrell's income over this five-year period came from the fraud not just billing Medicare but specifically from the fraud and there are charts at the end of the government's appendix that show exactly that. So this was this was a big deal to Dr. Farrell almost two-thirds of his income almost two-thirds of the money that he used to take vacation and buy for the living expenses of William and Bryce Woods came from this multi-million dollar fraud in which he engaged over the course of years. All of this evidence came in at trial and so and one last important piece the testimony of HHS Special Agent James O'Leary who testified that in June 2012 I believe at the time of a search of inner arts and take action offices Dr. Farrell made admissions consistent with everything else that was presented. So Dr. Shriver's testimony was one small piece of that of that evidentiary puzzle. That said I don't think this court should be getting to the harmless error analysis because I do think that even under the Gomez rules-based approach to Rule 404 B this evidence was properly admitted at trial first as direct evidence. You don't even get to Rule 404 B but even though the one piece that could be construed as 404 B evidence the piece concerning the fact that Dr. Farrell admitted that he owed money to the government that is proper Rule 404 B evidence under the Gomez analysis as motive evidence. Unless this court has any further questions the government asks this court to affirm the judgment of the district court. All right thank you very much. Thank you. Anything further? The government stated that Mr. Wood's statements were negligent at most and not inculpatory. It's our position respectfully that that would be for a jury determination as to the weight and credibility of that evidence and secondly Dr. Shriver's testimony based in view of specifically he states that Dr. Farrell sent students to nursing homes in Illinois and Texas. That's the transcript at page 758 of the trial testimony. So for those reasons your honor we respectfully request the court vacate the verdict and remand for a new trial. All right thank you very much. You were appointed as well were you not Mr. Adams? I was. We thank you very much for your assistance to the court, to your client. Thanks as well to the government. We'll take the case under advisement.